UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH R. MORGAN,<br>(Social Security No. XXX-XX-4073),<br><br>                Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)   1:08-cv-338-WGH-WTL<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 22, 23) and an Order of Reference entered by District Judge William T. Lawrence on October 1, 2008 (Docket No. 24).

**I. Statement of the Case**

Plaintiff, Kenneth Morgan, seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Social Security Income ("SSI") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d), 1381; 20 C.F.R. § 404.1520(f). This United States Magistrate Judge has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff applied for DIB and SSI in September and October 2003, alleging disability since March 24, 2003. (R. 63-65). The agency denied plaintiff's application both initially and on reconsideration. (R. 16). Plaintiff appeared and testified at a hearing before Administrative Law Judge Stephen Davis ("ALJ") on October 27, 2006. (R. 360-84). Plaintiff was represented by an attorney; also testifying was plaintiff's sister. (R. 360). On March 26, 2007, the ALJ issued his opinion finding that plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a full range of sedentary work. (R. 16-26). The Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 6-8). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on March 13, 2008, seeking judicial review of the ALJ's decision.

## II. Statement of the Facts

### A. Vocational Profile

Plaintiff was 49 years old at the time of the ALJ's decision and had a high school education. (R. 25). His past relevant work experience included work as a service technician and a maintenance man. (R. 24-25).

### B. Medical Evidence

#### 1. Plaintiff's Mental Health

Plaintiff underwent a consultative psychological evaluation by Herbert Henry, Ph.D., on December 6, 2003. (R. 162-67). Plaintiff reported no history of

mental health treatment. (R. 163). Testing measuring plaintiff's memory revealed that it was in the borderline to low-average range. (R. 167).

### 2. Plaintiff's Physical Impairments

Portions of the record describe plaintiff as having had a stroke in March 2003; however, it appears that he choked while eating a ham sandwich, passed out and fell, hitting his head and neck. The Heimlich maneuver was attempted without success, and plaintiff was intubated by paramedics. (R. 181, 188, 191-94, 220, 426-27). Plaintiff was treated for a spinal cord contusion. (R. 191-92).

Plaintiff was seen for a consultative exam by Michael R. Burt, M.D., on March 28, 2003. (R. 180-81). Plaintiff reported numbness in his hands (particularly his left) after a choking incident that resulted in a spinal cord contusion. (R. 181). Plaintiff exhibited decreased grip strength. (R. 181).

On August 26, 2003, plaintiff was seen by Craig R. Johnson, M.D., for evaluation of his heart. (R. 281). Dr. Johnson noted that plaintiff was doing quite well from a cardiovascular standpoint. Additionally, plaintiff had regained most of his function from the March incident. (R. 281).

On September 10, 2003, plaintiff visited Peter G. Gianaris, M.D., for a neurosurgical consultation. (R. 182-84). Plaintiff reported some memory loss and bilateral hand dexterity loss. (R. 182). Examination revealed mild diffuse weakness in his upper extremities. (R. 183). Dr. Gianaris opined that there was no need for spinal surgery, that there was no cord compression, and that plaintiff should continue with rehabilitation. (R. 183).

On March 18, 2004, plaintiff visited Aruna N. Rau, M.D., for a neurological follow-up. (R. 127-30). Plaintiff's history included an airway obstruction which resulted in respiratory arrest, a spinal cord contusion, and mild hypoxic encephalopathy. (R. 127). Plaintiff also had coronary artery disease, a prior cervical laminectomy, non-insulin dependant diabetes, mild carpel tunnel syndrome, diffuse paresthesias of the lower extremities, hypertension, hyperlipidemia, and past alcoholism. (R. 127). Plaintiff reported ten to 11 weeks of physical therapy along with several weeks of home therapy. (R. 128). Plaintiff complained of continued difficulty with his left side. (R. 128). Plaintiff's examination revealed essentially normal results for his extremities. (R. 129).

On March 25, 2004, plaintiff underwent a cervical spine MRI. (R. 342). Plaintiff had focal cord atrophy and signal intensity at the C2-3 region, which was deemed stable compared to a prior report. (R. 342). It was also noted that there was scattered degenerative disease including right paracentral osteophyte at C3-4 and right uncovertebral joint degeneration with right paracentral disk bulge at C5-6. (R. 342). Plaintiff also underwent a thoracic and lumbar spine MRI at the same time. (R. 343). It was noted that there was no dominant extrudal defect nor intrinsic cord pathology. (R. 343). There was scattered anterior vertebral body wedging that appears chronic in the lower thoracic spine. (R. 343).

On April 13, 2004, plaintiff visited Dr. Rau again for a neurological follow-up. (R. 117-20). Plaintiff reported doing fairly well except for recurrent episodes

of paresthesias on his left side. (R. 117-18). An examination of plaintiff's lower and upper extremities revealed fairly normal results. (R. 118). Plaintiff exhibited no neurological or motor deficits in his upper extremities other than slightly increased tone and milder spasticity on the left compared to the right. (R. 118). Plaintiff's grip was full (5/5) in his dominant right hand, and slightly lower (4/5) on the non-dominant left. (R. 118, 366). An EMG study revealed only mild carpel tunnel syndrome. (R. 119, 131-32). Dr. Rau opined that plaintiff should continue physical and occupational therapy. (R. 119). He also recommended a wrist splint for the carpel tunnel syndrome. (R. 120).

In the second half of 2005 plaintiff was consistently described as doing well, denying any problems other than neck pain and exhibiting grossly intact neurological function. (R. 423, 426-27).

On September 20, 2006, it was reported that plaintiff had undergone six physical therapy visits at Wishard Memorial Hospital for neck and low back pain. (R. 392). Plaintiff reported bilateral upper extremity parasthesias and loss of balance. (R. 392). Plaintiff had limited cervical range of motion with sidebending and rotation motions. (R. 392). Plaintiff displayed decreased sensation and weakness along C5 and C8-T1. (R. 392). Plaintiff displayed a moderate amount of sway during balance testing. (R. 392). Plaintiff was discharged from further physical therapy due to a lack of change in his status after sessions. (R. 392).

### 3. State Agency Review

State agency psychologists K. Neville, Ph.D., and J Pressner, Ph.D., reviewed the medical evidence of record in January and May 2004 and concluded that plaintiff did not exhibit a severe mental impairment. (R. 144-59).

State agency physicians J Sands, M.D., and B. Whitley, M.D., reviewed the evidence and concluded that plaintiff was capable of performing a full range of sedentary work. (R. 171-78).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV.  Standard for Disability

In order to qualify for disability benefits under the Act, plaintiff must establish that he suffers from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  *Id.*  The burden of proof is on plaintiff during steps one through four, and only after plaintiff has reached step five does the burden shift to the Commissioner.  *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that plaintiff had not engaged in substantial gainful activity since the alleged onset date and that plaintiff was insured for DIB through December 31, 2007.  (R. 18).  The ALJ continued by finding that, in

accordance with 20 C.F.R. § 404.1520, plaintiff had five impairments that are classified as severe: (1) cervical myelopathy; (2) bilateral mild carpel tunnel syndrome; (3) coronary artery disease; (4) non-insulin dependant diabetes; and (5) hypertension. (R. 18). The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). Additionally, the ALJ opined that plaintiff's allegations regarding the extent of his limitations were not fully credible. (R. 24). Consequently, the ALJ concluded that plaintiff retained the RFC for a full range of sedentary work with the exception that he must avoid unprotected heights or dangerous moving machinery. (R. 20). The ALJ opined that plaintiff could not perform his past work. (R. 24). However, plaintiff was a younger individual with a high school education and no transferable skills; plaintiff retained the RFC to perform a significant range of sedentary work. (R. 25). The ALJ concluded by finding that plaintiff was not under a disability. (R. 25).

### VI. Issues

Plaintiff has raised five issue. The issues are as follows:

1. Whether remand is necessary for consideration of new evidence.
2. Whether the ALJ properly considered plaintiff's hand functioning.
3. Whether the ALJ properly considered testimony from Ms. Smith.
4. Whether the ALJ properly considered plaintiff's obesity.
5. Whether the ALJ properly considered plaintiff's mental health.

**Issue 1:     Whether remand is necessary for consideration of new evidence.**

Plaintiff first argues that this case should be remanded in order for the ALJ to consider new evidence. A federal court may not consider new evidence in reviewing the ALJ's decision. *Rasmussen v. Astrue,* 2007 WL 3326524 at *4 (7th Cir 2007). However, the court may remand for an ALJ to consider additional evidence if such evidence is both new and material and if there has been shown good cause for the failure to incorporate the evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); *Schmidt v. Barnhart,* 395 F.3d 737, 741-42 (7th Cir. 2005). Evidence is considered "new" if it was not available or in existence at the time of the administrative proceeding. *Schmidt*, 395 F.3d at 741-42. The evidence is "material" if there is a reasonable probability that the ALJ would have reached a different conclusion had he considered the evidence, meaning that the evidence must be relevant to plaintiff's condition during the relevant time period under consideration by the ALJ. *Id.*

Here, plaintiff seeks remand so that the ALJ may consider a Physical Residual Functional Capacity Assessment form filled out by Vera Shreder, M.D., on April 27, 2007. (R. 317-19). The form indicates the following: (1) plaintiff can only sit continuously for one-half hour, stand continuously for three-fourths hours, and walk continuously for one-fourth to one-half hour; (2) plaintiff can only sit for a maximum of one-half hour in a workday, can only stand for a maximum of one-half to three-fourths hour in a workday, and can only walk for a maximum of one-fourth to one-half hour in a workday; (3) he can never lift or

carry more than ten pounds and can only occasionally lift or carry six to ten pounds; and (4) he cannot do simple grasping or fine manipulation in either hand. (R. 317-18).

Plaintiff has failed to meet his burden of demonstrating that this medical evidence satisfies the requirements for remand outlined in 42 U.S.C. § 405(g). The evidence simply consists of a single form filled out by Dr. Shreder. There is no evidence that Dr. Shreder examined plaintiff and found deficits in his upper extremity strength and impairment of his ability to stand, sit, or walk. Hence, the evidence, which is not supported by any objective medical tests, is not consistent with the medical evaluations from Dr. Rau from March and April 2004. (R. 117-20 127-30). Because the evidence lacks the support of objective medical tests and is inconsistent with actual objective medical tests, there is not a reasonable probability that the ALJ would have reached a different conclusion had this form been available. Additionally, there is no evidence that the report relates to the proper time period. Plaintiff alleges disability beginning March 24, 2003, and the ALJ issued his decision on March 26, 2007. Thus, any new evidence presented must speak to plaintiff's condition during that four-year period. Yet, Dr. Shreder's form was not completed until April 27, 2007. Given objective medical evidence in 2004 and 2005 that revealed relatively normal results for plaintiff's extremities and given the fact that Dr. Shreder's form does

not purport to relate to the relevant time period, the court cannot conclude that it qualifies as new evidence.[1]

**Issue 2:    Whether the ALJ properly considered plaintiff's hand functioning.**

Plaintiff's counsel also finds fault in the ALJ's analysis of plaintiff's hand functioning.  Specifically, plaintiff contends that Dr. Shreder's form which documents plaintiff's "inability to use his hands 'frequently' or 'occasionally' for simple grasping or fine manipulation" should have led to a more significant reduction of plaintiff's residual functional capacity than the ALJ found.  (Plaintiff's Brief at 8).  However, as the court has already noted, we may not consider this new evidence in reviewing the ALJ's decision.  *Rasmussen*, 2007 WL 3326524 at *4.  The ALJ was presented with substantial objective medical evidence which revealed minimal impairment of plaintiff's upper extremity strength.  It was not error for the ALJ to rely on this medical evidence in formulating his RFC assessment.

**Issue 3:    Whether the ALJ properly considered testimony from Ms. Smith.**

Plaintiff's counsel also finds fault in the ALJ's treatment of the testimony of plaintiff's sister, Alice Smith.  Specifically, plaintiff argues that the ALJ did not adhere to Social Security Ruling 96-7p.  An ALJ's credibility determination will

---

[1] If plaintiff had been able to demonstrate that the form from Dr. Shreder was based on her examination of plaintiff during the relevant time period, then plaintiff would have still had the additional obstacle of demonstrating good cause for why it was not presented to the ALJ prior to his decision.  Plaintiff was represented at the hearing by counsel, and the court must presume that plaintiff's counsel was presenting plaintiff's best case.

not be overturned unless it is "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). Here, the ALJ's "credibility" decision is also an evaluation of plaintiff's complaints of pain. The ALJ must, therefore, not only consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, but also 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or*

> *psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

SSR 96-7p (emphasis added). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional

limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ, in this case, conducted a thorough, reasoned analysis of plaintiff's credibility in accordance with SSR 96-7p's requirements as well as the requirements of 20 C.F.R. § 404.1529, examining plaintiff's daily activities (R. 19), the location, duration, frequency, and intensity of plaintiff's pain and other symptoms (R. 21-23), precipitating and aggravating factors (R. 23), the type, dosage, and side effects of plaintiff's medications (R. 23), additional treatment (R. 23), and functional limitations (R. 23). Based on these factors, as well as the statement of plaintiff's other sister Ruth Smith, the ALJ determined that the limitations asserted in the testimony of Alice Smith "are not fully consistent with the objective medical record and are not sufficient to keep [plaintiff] from working at the level I have assessed." (R. 24). Nothing about this determination was inconsistent with SSR 96-7p or 20 C.F.R. § 404.1529.

**Issue 4:   Whether the ALJ properly considered plaintiff's obesity.**

Plaintiff also argues that the ALJ should have considered plaintiff's obesity and adjusted plaintiff's RFC accordingly. At the time of plaintiff's hearing before the ALJ, plaintiff testified that he was five feet nine inches tall and weighed 215 pounds. (R. 366). Plaintiff was represented by an attorney at his hearing, and there does not appear to have been an attempt to raise the issue of obesity at that time. Additionally, the records do not indicate that any of plaintiff's medical providers opined that he was obese or that obesity would limit his residual

functional capacity. Absent any objective medical evidence to support a finding of obesity, the ALJ did not err by failing to address the issue of obesity.

**Issue 5:      Whether the ALJ properly considered plaintiff's mental health.**

Finally, plaintiff's counsel asserts that the ALJ failed to properly assess plaintiff's ability to perform the mental requirements of work. However, the only medical evidence examining plaintiff's mental health consisted of testing on December 6, 2003, that revealed that plaintiff's memory was in the borderline to low-average range. (R. 162-67). Plaintiff underwent no other mental health treatment and only alleged physical problems when he first applied for social security disability benefits. Additionally, State agency psychologists concluded that plaintiff did not have a severe mental impairment. Based on this evidence, the ALJ concluded that:

> The evidence shows that the claimant has a mild restriction of his activities of daily living and mild difficulties in maintaining social functioning related to his mental impairment. He has mild deficiencies of concentration, persistence, or pace; and he has had no extended episodes of deterioration. These findings are consistent with the State Agency medical consultant (Ex. 1F at 43). Furthermore, his symptoms have not resulted in such marginal adjustment that even a minimal increase in mental demands or a change in the environment could be expected to cause him to decompensate; and he does not have a current history of an inability to function outside a highly supportive living arrangement. In summary, the claimant's functional limitations from his mental impairment are so slight that I find that his mental impairments are not severe impairments when considered individually. Nevertheless, I have considered those impairments in combination with his other impairments in the remaining steps of my analysis.

(R. 19-20). Based on plaintiff's mild mental health findings, the ALJ's treatment of this issue was proper. There is not substantial medical evidence to support a

determination that plaintiff had more severe memory problems than the ALJ found. Therefore, the ALJ was not obligated to reduce plaintiff's residual functional capacity beyond the limitation to sedentary work.

### VII. Conclusion

The ALJ's decision was supported by substantial evidence and his credibility determination was not patently wrong. The additional evidence that plaintiff submitted cannot be considered by this court and does not constitute "new evidence" warranting remand. Additionally, there was no objective medical evidence to support a conclusion that plaintiff was obese or that his obesity affected his residual function capacity. And, based on the other objective medical evidence, the ALJ was not obligated to accept the testimony of plaintiff's sister Alice Smith. Finally, plaintiff's memory impairment did not warrant any additional limitations to his residual functional capacity. The ALJ's decision is, therefore, **AFFIRMED.**

    **SO ORDERED.**

**Dated:** May 22, 2009

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov